# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| CENT. IOWA POWER COOP., <br><br> Plaintiff, <br><br> vs. <br><br> MIDWEST INDEP. TRANSMISSION SYS. OPERATOR, INC.; RESALE POWER GROUP OF IOWA; AFTON, IA; AMANA SOC'Y SERV. CO.; AMANA, IA; ANITA MUN. UTILS.; ANITA, IA; COGGON MUN. LIGHT PLANT; COGGON, IA; DYSART, IA; FARMERS ELEC. COOP.; FRYTOWN, IA; GRAND JUNCTION MUN. LIGHT PLANT; GRAND JUNCTION, IA; HOPKINTON MUN. UTIL.; HOPKINTON, IA; LAPORTE CITY UTILS.; LAPORTE CITY, IA; LONG GROVE, IA; MAQUOKETA, IA; NEW LONDON MUN. UTILS.; NEW LONDON, IA; OGDEN MUN. UTILS.; OGDEN, IA; PRESTON, IA; STANHOPE, IA; STATE CTR., IA; STORY CITY MUN. ELEC. UTILS.; STORY CITY, IA; STRAWBERRY POINT UTILS.; STRAWBERRY POINT, IA; TIPTON, IA; TRAER MUN. UTILS.; TRAER, IA; VINTON MUN. ELEC. UTIL.; VINTON, IA; and WEST LIBERTY, IA, <br><br> Defendants. | No. 06-CV-0053-LRR <br><br> **ORDER** |

_____

*TABLE OF CONTENTS*

*I.     INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
*II.    RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . . *3*
*III.   MOTION TO JOIN*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
*IV.   JURISDICTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*
*V.    STANDARD AND SCOPE OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . *6*
*VI.   FACTS*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*
*VII.  SUMMARY OF ARGUMENTS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*
*VIII. ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *15*
*IX.   CONCLUSION*  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *19*

*I. INTRODUCTION*

The matters before the court are the Motion to Dismiss (docket no. 24), filed by Midwest Independent Transmission System Operator, Inc. ("Midwest ISO"), and the Motion to Join Midwest ISO's Motion to Dismiss ("Motion to Join") (docket no. 25), filed by Resale Power Group of Iowa ("RPGI") and the remaining defendants ("Participants of RPGI")[1]. Central Iowa Power Cooperative ("CIPCO") resists the Motion to Dismiss.

---

[1] For purposes of the Motion to Dismiss and the Motion to Join, the Participants of RPGI consist of RPGI's members, that is, utilities that are associated and on whose behalf RPGI purchases electric energy, capacity and transmission service, and municipalities that are related to those members or utilities. The thirty-five Participants of RPGI include: Afton, Iowa; Amana, Iowa; Amana Society Service Co.; Anita, Iowa; Anita Municipal Utilities; Coggon, Iowa; Coggon Municipal Light Plant; Dysart, Iowa; Frytown, Iowa; Farmers Electric Cooperative; Grand Junction, Iowa; Grand Junction Municipal Light Plant; Hopkinton, Iowa; Hopkinton Municipal Utility; LaPorte City, Iowa; LaPorte City Utilities; Long Grove, Iowa; Maquoketa, Iowa; New London, Iowa; New London

(continued…)

2

Although Midwest ISO and CIPCO request a hearing, the court finds that a hearing is not warranted in light of the record. The matters, therefore, are fully submitted and ready for decision.

## II. RELEVANT PROCEDURAL BACKGROUND

On or about August 26, 2004, CIPCO filed a Complaint against Midwest ISO with the Federal Energy Regulatory Commission ("FERC"). CIPCO sought relief under the Federal Power Act ("FPA"), 16 U.S.C. § 791a, *et seq*. On February 7, 2005, FERC concluded that CIPCO, as a Rural Utility Service ("RUS")-financed electric cooperative and not a regulated public utility under the FPA, did not fall within its jurisdiction. On November 1, 2005, FERC denied CIPCO's request for rehearing and clarified its prior conclusion that CIPCO did not fall within its jurisdiction.

On March 6, 2006, CIPCO filed a Petition against Midwest ISO, RPGI and the Participants of RPGI in the Iowa District Court for Linn County. In the Petition, CIPCO asserts four counts: (1) Quantum Meruit or Implied Contract In Fact—CIPCO contends that Midwest ISO delivers energy and power over its electrical transmission system to RPGI and the Participants of RPGI and that Midwest ISO does not compensate CIPCO for the use of its electrical transmission system; (2) Unjust Enrichment or Implied Contract In Law—CIPCO claims that Midwest ISO receives a benefit by delivering power over CIPCO's electrical transmission system, that RPGI and the Participants of RPGI receive a benefit by accepting power delivered over CIPCO's electrical transmission system and that the receipt of such benefits without compensating CIPCO is inequitable and

---

[1](…continued)
Municipal Utilities; Ogden, Iowa; Ogden Municipal Utilities; Preston, Iowa; Stanhope, Iowa; State Center, Iowa; Story City, Iowa; Story City Municipal Electric Utilities; Strawberry Point, Iowa; Strawberry Point Utilities; Tipton, Iowa; Traer, Iowa; Traer Municipal Utilities; Vinton, Iowa; Vinton Municipal Electric Utility; and West Liberty, Iowa.

3

detrimental to CIPCO; (3) Trespass—CIPCO maintains that Midwest ISO, RPGI and the Participants of RPGI are using CIPCO's electrical transmission system without its permission and without compensating it and that such unlawful use substantially interferes with CIPCO's exclusive possession, use and enjoyment of the electrical transmission system; and (4) Conversion—CIPCO alleges that Midwest ISO, RPGI and the Participants of RPGI intentionally used and continue to use CIPCO's electrical transmission system without compensating CIPCO and that they have wrongfully exerted dominion over CIPCO's property. As relief, CIPCO seeks:

> (1) Payment from [RPGI and the Participants of RPGI] that have received energy and power carried over CIPCO's electrical transmission system in an amount that will compensate CIPCO for the use of its [electrical transmission system] based upon the applicable service charges established in [the CIPCO Open Access Transmission Tariff]; or in the alternative, . . .
>
> (2) Payment from [Midwest ISO] for delivering power and energy over CIPCO's electrical transmission system since [Midwest ISO] never sought permission to use CIPCO's electrical transmission system to deliver power and energy to [the Participants of RPGI] and has never compensated CIPCO for this use. CIPCO seeks compensation based upon the applicable service charges established in [the CIPCO Open Access Transmission Tariff]; and
>
> (3) An order from the court ordering [Midwest ISO, RPGI and the Participants of RPGI] to pay CIPCO for the use of its electrical transmission system [and] for any future use of CIPCO's [electrical transmission] system; and
>
> (4) Interest and costs of this action plus any other relief deemed equitable and appropriate by the court.

4

On April 13, 2006, Midwest ISO, relying on 28 U.S.C. § 1441 and 28 U.S.C. § 1446, filed a Notice of Removal in the Iowa District Court for Linn County and this court. RPGI and the Participants of RPGI joined Midwest ISO's Notice of Removal.

On May 12, 2006, CIPCO filed a Motion to Remand. RPGI and Midwest ISO resisted CIPCO's efforts to have the case remanded to the Iowa District Court for Linn County. On June 2, 2006, Midwest ISO filed an Answer to the Petition, and, on June 12, 2006, RPGI filed an Answer to the Petition.

On September 21, 2006, Midwest ISO filed the instant Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and Federal Rule of Civil Procedure 12(b)(6). In its Motion to Dismiss, Midwest ISO seeks dismissal of all four counts contained in the Petition. On September 26, 2006, RPGI filed the instant Motion to Join. On October 17, 2006, CIPCO filed a Resistance to the Motion to Dismiss. On October 27, 2006, Midwest ISO filed a Reply. On January 24, 2007, Midwest ISO filed Supplemental Authority in support of its Motion to Dismiss. On February 22, 2007, CIPCO filed a Response to Midwest ISO's Supplemental Authority. On February 26, 2007, Midwest ISO filed a Reply ("Second Reply") to CIPCO's Response.

On March 30, 2007, the court entered an order ("March Order"), which denied CIPCO's Motion to Remand. On May 4, 2007, RPGI, relying in part on the court's March Order, filed a Supplement to its Motion to Join.

### III. MOTION TO JOIN

In their Motion to Join, RPGI and the Participants of RPGI seek to join Midwest ISO's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 10(c). CIPCO did not resist the Motion to Join. *See* LR 7.1.e. Because the Motion to Join is properly supported and unresisted, it shall be granted. *See* LR 7.1.f.

5

## IV. JURISDICTION

In its March Order, the court determined that it has federal question jurisdiction over this matter. *See* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). To the extent that the Petition raises purely state law claims, supplemental jurisdiction exists. 28 U.S.C. § 1367(a) ("[T]he district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action with such original jurisdiction that they form part of the same case or controversy . . . ."). *But see* 28 U.S.C. § 1367(c) (granting a district court discretion to decline to exercise supplemental jurisdiction over state law claims under certain circumstances). The court remains satisfied that it has subject matter jurisdiction over each of the counts presented in the Petition.

## V. STANDARD AND SCOPE OF REVIEW

In considering the Motion to Dismiss, the court must assume that all of the facts alleged in the Petition are true, and it must liberally construe the Petition in the light most favorable to the nonmoving party. *See In re Operation of Mo. River Sys. Litig.*, 418 F.3d 915, 917 (8th Cir. 2005); *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001); *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999); *Coleman v. Watt*, 40 F.3d 255, 258 (8th Cir. 1994). Nevertheless, the court need not accept as true legal conclusions or unwarranted inferences. *See Silver v. H & R Block, Inc.*, 105 F.3d 394, 397 (8th Cir. 1997); *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate "'only if it is clear that no relief can be granted under any set of facts that could be proved consistent with the allegations.'" *Handeen v. Lemaire*, 112 F.3d 1339, 1347 (8th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984)); *see also Mo. River Sys. Litig.*, 418 F.3d at 917 (stating same principle); *Broadus v. O.K. Indus., Inc.*, 226

6

F.3d 937, 941 (8th Cir. 2000) (same); *Alexander v. Peffer*, 993 F.2d 1348, 1349 (8th Cir. 1993) (same). Thus, as a practical matter, dismissal under Federal Rule of Civil Procedure 12(b)(6) is warranted only when the allegations included in the Petition show that there is some insuperable bar to relief. *Strand v. Diversified Collection Serv., Inc.*, 380 F.3d 316, 317 (8th Cir. 2004); *Alexander*, 993 F.2d at 1349.[2]

## VI. FACTS[3]

For purposes of the Motion to Dismiss, the court accepts as true the facts that are alleged in the Petition. Those facts are as follows:

RPGI is an association of electric utilities and municipalities. On January 1, 2004, RPGI, acting on behalf of the Participants of RPGI, began purchasing electric energy, capacity and transmission service from Ameren Energy Marketing Company ("AEMC").[4] Midwest ISO is a FERC-approved regional transmission organization ("RTO"). As an RTO, Midwest ISO began offering regional transmission service to its members in February of 2002. Midwest ISO provides transmission service pursuant to the rates, terms and conditions of its Open Access Transmission Tariff ("Midwest ISO OATT"). The wholesale power purchased by RPGI from AEMC is delivered to the Participants of RPGI by Midwest ISO.

---

[2] The court notes that "[a] motion to dismiss for lack of jurisdiction under [Federal Rule of Civil Procedure 12(b)(1)] which is limited to a facial attack on the pleadings is subject to the same standard as a motion brought under [Federal Rule of Civil Procedure 12(b)(6)]." *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 698 (8th Cir. 2003) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)).

[3] In its March Order, the court provided an extensive factual background of the instant action.

[4] Ameren Corporation ("Ameren") is an electric and gas utility. AEMC is a subsidiary of Ameren. Ameren Services Company ("Ameren Services") is also a subsidiary of Ameren. Ameren Services, as agent for certain of Ameren's subsidiaries, is a member of Midwest ISO.

7

CIPCO is engaged in the generation, transmission and distribution of electric power and energy. In 1946, CIPCO and Iowa Electric Light & Power Company ("Iowa Electric") entered into an Operating and Transmission Agreement. In 1991, CIPCO and Iowa Electric revised and restated the Operating and Transmission Agreement ("O&T Agreement"). The purpose of the O&T Agreement is to facilitate the smooth integration of transmission facilities and to clarify the rights and responsibilities of the respective transmission owners. Under the O&T Agreement, CIPCO and Iowa Electric coordinate planning and construction of new transmission facilities and lines to enhance efficiency and reduce duplication of facilities in an area defined as the integrated transmission system ("ITS"). CIPCO and Iowa Electric do not jointly own the transmission facilities that are included in the ITS. Rather, CIPCO and Iowa Electric have title to and own discrete transmission facilities and substations. Further, Iowa Electric and CIPCO have the right to use the ITS, which includes the other party's facilities, to serve their customers or members. Finally, the O&T Agreement governs the use of the ITS for the benefit of other systems or electric suppliers. Specifically, where either Iowa Electric or CIPCO enter into an agreement with a third party to provide transmission for the third party, the agreement must be approved by Iowa Electric and CIPCO.

Interstate Power & Light Company ("IPL") is a subsidiary of Alliant Energy Corporation ("Alliant"). IPL succeeded Iowa Electric under the O&T Agreement. As a successor, IPL is a regulated utility, that is, a FERC-jurisdictional utility.

On November 18, 1999, Alliant joined Midwest ISO. Alliant is a transmission facilities owning member of, and a participant in, Midwest ISO. On December 3, 1999, Alliant, relying on section 203 of the FPA, 16 U.S.C. § 824b, filed an application with FERC to transfer functional operational control over certain of its jurisdictional transmission facilities to Midwest ISO. CIPCO intervened in that proceeding because Alliant's application listed certain CIPCO owned facilities that would be transferred to

Midwest ISO. On March 31, 2000, FERC authorized Alliant to transfer functional operational control over certain of Alliant's jurisdictional transmission facilities to Midwest ISO. FERC only approved the transfer of the jurisdictional transmission facilities owned by Alliant. Midwest ISO now administers Alliant's transmission facilities and service across these facilities, that is, the transmission facilities that are included in the Alliant West Control Area.[5]

In the fall of 2003, CIPCO learned that Ameren would become the power supplier to RPGI on January 1, 2004 and would be using Midwest ISO's jurisdictional transmission facilities, which include IPL's facilities, to deliver power to the Participants of RPGI. In a letter dated October 6, 2003, CIPCO informed Ameren that power could not be delivered to the Participants of RPGI, that is, a number of Iowa cities who were going to purchase power from Ameren after January 1, 2004, without using CIPCO's transmission facilities. CIPCO also informed Ameren that, in order to provide electrical service to the Participants of RPGI or complete the transmission service path to the Participants of RPGI, transmission lines and substation facilities that were owned, maintained and operated by CIPCO would have to be utilized, and CIPCO requested that Ameren work with CIPCO so that CIPCO's electrical transmission system could be utilized.

Since November of 1999, Midwest ISO has been on notice that CIPCO owns transmission facilities that are interconnected to Alliant's jurisdictional transmission facilities. Without CIPCO's electrical transmission system, Midwest ISO has no way to deliver power from Ameren to the Participants of RPGI, and Midwest ISO is aware that the Participants of RPGI can be served with energy by only using CIPCO's electrical transmission system.

---

[5] Alliant is the control area operator for the Alliant West Control Area. The ITS is located within the Alliant West Control Area.

9

RPGI has compensated Alliant for wholesale power that Midwest ISO delivered on IPL's transmission facilities. The compensation that RPGI paid to Alliant is calculated pursuant to the zonal rates established for Alliant in the Midwest ISO OATT, and it is only based on the use of IPL's transmission facilities.

Pursuant to the O&T Agreement, Midwest ISO, RPGI and the Participants of RPGI have not sought permission from CIPCO to use transmission facilities that are owned by CIPCO and part of the ITS. The Participants of RPGI continue to receive energy and power through CIPCO's electrical transmission system without compensating CIPCO. Similarly, Midwest ISO continues to deliver power to the Participants of RPGI over CIPCO's electrical transmission system without compensating CIPCO, even though Midwest ISO was informed on numerous occasions that the cost of using CIPCO's electrical transmission system is not included in the zonal rates established for Alliant in the Midwest ISO OATT.

CIPCO adopted a non-federal or pro forma Open Access Transmission Tariff ("CIPCO OATT") and provides transmission service to third parties based on rate schedules that are included in the CIPCO OATT. Midwest ISO does not administer the CIPCO OATT. Since January 20, 2004, CIPCO has sent monthly invoices to RPGI for the use of CIPCO's electrical transmission system. The invoiced charges are based upon the rates that are set forth in the CIPCO OATT. To date, the invoices sent to RPGI total approximately $10 million. RPGI and the Participants of RPGI have failed to pay any of the invoices sent to them.

## VII.  SUMMARY OF ARGUMENTS

In its Motion to Dismiss, Midwest ISO asserts that dismissal is warranted because CIPCO's claims are preempted under the FPA and CIPCO's claims are barred under the filed rate doctrine. Concerning its first assertion, Midwest ISO contends that CIPCO's claims impermissibly require the court to invade FERC's exclusive and plenary jurisdiction

over the transmission and sale of electric energy at wholesale in interstate commerce and over jurisdictional utilities. With respect to its second assertion, Midwest ISO contends that the court's resolution of CIPCO's claims will necessarily interfere with the rates, terms and conditions of service that FERC approved for Midwest ISO and Alliant or IPL.

In its Resistance, CIPCO requests that the court deny the Motion to Dismiss filed by Midwest ISO and joined by RPGI and the Participants of RPGI. CIPCO argues that denying the Motion to Dismiss is appropriate because the issues in the instant action involve state law claims, not federal claims. CIPCO explains that it previously sought relief by filing the Complaint with FERC and, in light of FERC's conclusions and recommendation, filed the Petition. CIPCO also explains that "[t]he issue in this proceeding does not involve a FERC-jurisdictional rate or service; rather, the issue is the rate at which CIPCO, as a non-FERC regulated utility, may charge an entity for use of its facilities." Further, to support its argument that dismissal is not warranted, CIPCO states that the counts raised in the Petition do not implicate federal tariffs and filing a complaint pursuant to section 206 of the FPA, 16 U.S.C. § 824e,[6] does not resolve the state issues raised by CIPCO.

---

[6] Section 206(a) of the FPA, 16 U.S.C. § 824e(a), addresses FERC's ability to fix rates and charges and to determine the cost of production or transmission. Section 206(a) of the FPA, 16 U.S.C. § 824e(a), in relevant part, provides:
> Whenever [FERC], after a hearing held upon its own motion or upon complaint, [finds] that any rate, charge, or classification, demanded, observed, charged, or collected by any public utility for any transmission or sale subject to the jurisdiction of [FERC], or that any rule, regulation, practice, or contract affecting such rate, charge, or classification is unjust, unreasonable, unduly discriminatory or preferential, [FERC must] determine the just and reasonable rate, charge, classification, rule, regulation, practice, or contract to be thereafter observed and in force, and shall fix the same by order.

11

Midwest ISO's Reply raises a couple of points. First, Midwest ISO contends that CIPCO's non-jurisdictional status is irrelevant. Midwest ISO argues that CIPCO's status as a non-jurisdictional electric cooperative cannot be used to defeat the Motion to Dismiss. Acknowledging that CIPCO is exempt from certain provisions of the FPA by virtue of its section 201(f), 16 U.S.C. § 824(f),[7] status and that FERC does not exercise traditional "public utility" jurisdiction over CIPCO, Midwest ISO attempts to make clear that CIPCO's requested relief impermissibly interferes with the rates, terms and conditions of service that FERC established for Midwest ISO and Alliant or IPL. Midwest ISO also attempts to make clear that it is not taking a position that is inconsistent with the position that it took before FERC, and it objects to any attempt by CIPCO to modify, interpret or otherwise interfere with FERC-approved rates, tariffs, and contracts without going to FERC, that is, relying on section 206 of the FPA, 16 U.S.C. § 824e, to effectuate such modification.

Second, Midwest ISO contends in its Reply that CIPCO's requested relief is inconsistent with FERC's directives. Midwest ISO disputes CIPCO's interpretation of the orders entered by FERC. It maintains that the Petition does not seek a declaration or a determination as to an appropriate charge to be paid by Midwest ISO or IPL and argues that CIPCO's request for retroactive damages is improper because such damages would violate the filed rate doctrine and its concomitant rule against retroactive ratemaking. Midwest ISO claims that CIPCO incorrectly states that dismissal of the instant action would deprive it of a remedy because FERC is able to modify the compensation arrangements set forth in the O&T Agreement.

---

[7] Section 201(f) of the FPA, 16 U.S.C. § 824(f), provides that no provision in the FPA applies to an electric cooperative that receives financing under the Rural Electrification Act of 1936, 7 U.S.C. § 901, *et seq*.

In its Supplemental Authority, Midwest ISO asks the court to take notice of *National Association of Regulatory Utility Commissioners v. FERC*, 475 F.3d 1277 (D.C. Cir. 2007) ("*NARUC*"). Midwest ISO cites *NARUC* for the proposition that, under the FPA, FERC may exercise jurisdiction over transactions between jurisdictional utilities like Alliant and non-jurisdictional utilities like CIPCO. According to Midwest ISO, FERC is able to exercise jurisdiction over a complaint brought by CIPCO against Alliant with regard to the O&T Agreement. CIPCO's Response claims that Midwest ISO, by relying on *NARUC*, is materially changing its position and seems to be backing away from its position that FERC is the forum that has exclusive jurisdiction of these issues. CIPCO also claims that the facts of *NARUC* are distinguishable from the facts involved in the instant case and contends that the holding of *NARUC* is not applicable because this case involves non-jurisdictional service by a non-jurisdictional utility over facilities that are not jointly owned with a jurisdictional utility. In its Second Reply, Midwest ISO clarifies that its reliance on *NARUC* does not in any way change the arguments that it has presented to FERC or the court. Specifically, Midwest ISO states that: (1) it removed the case from the Iowa District Court for Linn County because the counts contained in CIPCO's Petition raise issues that arise under the FPA; (2) it moved to dismiss the action because (a) the FPA granted FERC the power to provide effective federal regulation of the business of transmitting and selling electric power in interstate commerce, (b) CIPCO's claims are based on the O&T Agreement, which is a rate schedule that is incorporated in the Midwest ISO OATT, and (c) FERC may revise the compensation arrangement set forth in the O&T Agreement under section 206 of the FPA, 16 U.S.C. § 824e; and (3) it cited *NARUC* in support of its position that CIPCO's commercial relationship with IPL or Alliant under the O&T Agreement is the basis of FERC's jurisdiction and, regardless of its non-jurisdictional status, CIPCO should file a complaint with FERC because it has the legal authority to revise the compensation arrangement set forth in the O&T Agreement.

13

In its Supplement, RPGI and the Participants of RPGI highlight findings made by the court in its March Order and maintain that those findings demonstrate that CIPCO's claims are barred by the filed rate doctrine and must be dismissed. They argue that: (1) because transmission service to the Participants of RPGI over the ITS is governed by the Midwest ISO OATT, that is, a filed FERC-jurisdictional tariff, the only legal rate for such service is the rate set forth in the Midwest ISO OATT, and requested relief that is inconsistent with the filed rate is preempted by section 201 of the FPA, 16 U.S.C. § 824,[8] section 205 of the FPA, 16 U.S.C. § 824d,[9] and section 206 of the FPA, 16 U.S.C. § 824e; (2) the court is unable to give CIPCO the relief it seeks because CIPCO seeks payments in addition to the filed rate; and (3) if CIPCO believes that it is not being compensated for third party use of the ITS under the current filed rate, CIPCO should seek

---

[8] Section 201(a) of the FPA, 16 U.S.C. § 824(a), provides for federal regulation of "the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce." Section 201(b) of the FPA, 16 U.S.C. § 824(b), indicates that the FPA applies to "the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce."

[9] Two subsections are pertinent here. Section 205(a) of the FPA, 16 U.S.C. § 824d(a), provides:
> All rates and charges made, demanded, or received by any public utility for or in connection with the transmission or sale of electric energy subject to the jurisdiction of [FERC], and all rules and regulations affecting or pertaining to such rates or charges shall be just and reasonable, and any such rate or charge that is not just and reasonable is hereby declared to be unlawful.

And, section 205(c) of the FPA, 16 U.S.C. § 824d(c), requires public utilities to
> file with [FERC] schedules showing all rates and charges for any transmission or sale subject to the jurisdiction of [FERC], and the classifications, practices and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services.

14

to have the filed rate changed prospectively by either having Alliant file a new schedule showing its rates and charges and the practices and regulations affecting such charges or filing a complaint pursuant to section 206 of the FPA, 16 U.S.C. § 824e.

## VIII. ANALYSIS

Federal preemption of state law is rooted in Article VI, clause 2, of the Constitution, that is, the Supremacy Clause. *N. States Power Co. v. Minn.*, 447 F.2d 1143, 1145 (8th Cir. 1971). It provides:

> This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. art. VI, clause 2. Under the Supremacy Clause, federal preemption "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S. Ct. 1305, 51 L. Ed. 2d 604 (1977) (citations omitted). In the absence of express preemption, federal law is elevated above state law in two situations: (1) "federal law can occupy a field of law so completely that [preemption] may be inferred" and (2) "federal law can conflict with state law, thereby preempting it". *Schweiss v. Chrysler Motors Corp.*, 922 F.2d 473, 474 (8th Cir. 1990) (citing *English v. General Elec. Co.*, 496 U.S. 72, 78-79, 110 S. Ct. 2270, 110 L. Ed. 2d 65 (1990)); *see also Parten v. Consol. Freightways Corp.*, 923 F.2d 580, 582 (8th Cir. 1991) (listing methods of preemption).

Under section 201(a) of the FPA, 16 U.S.C. § 824(a), "the transmission of electric energy in interstate commerce and the sale of such energy at wholesale in interstate commerce" is subject to federal regulation. The FPA delegates to FERC exclusive control over the sale and transmission of wholesale energy in interstate commerce. 16 U.S.C. §§

15

824-824m; *see also Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 371-72, 108 S. Ct. 2428, 101 L. Ed. 2d 322 (1988) ("FERC has exclusive authority to determine the reasonableness of wholesale rates."); *New England Power Co. v. New Hampshire*, 455 U.S. 331, 340, 102 S. Ct. 1096, 71 L. Ed. 2d 188 (1982) (finding that Congress assigned to FERC the "exclusive authority to regulate the transmission and sale at wholesale of electric energy in interstate commerce"). FERC's exclusive regulatory authority extends over "all facilities for such transmission or sale of electric energy." 16 U.S.C. § 824(b)(1); *see also California ex. rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 849-50 (9th Cir. 2004) (citing *Duke Energy Trading & Mktg., L.L.C. v. Davis*, 267 F.3d 1042, 1056 (9th Cir. 2001)). By enacting the FPA, Congress intended "to draw a bright line easily ascertained, between state and federal jurisdiction, [and did so] by making [FERC's] jurisdiction plenary and extending it to all wholesale sales in interstate commerce except those which Congress has made explicitly subject to regulation by the States." *FPC v. S. Cal. Edison Co.*, 376 U.S. 205, 215-16, 84 S. Ct. 644, 11 L. Ed. 2d 638 (1964); *see also Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 966, 106 S. Ct. 2349, 90 L. Ed. 2d 943 (1986) (citing *S. Cal. Edison Co.*). Therefore, Congress clearly intended the FPA to preempt the field of matters relating to the sale and transmission of wholesale energy in interstate commerce. *See Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 305, 108 S. Ct. 1145, 99 L. Ed. 2d 316 (1988) (stating that, under the Natural Gas Act, "Congress occupied the field of matters relating to wholesale sales and transportation of natural gas in interstate commerce").

Because federal law exclusively occupies the field of matters relating to the transmission and sale at wholesale of electric energy in interstate commerce, CIPCO's claims are barred by field preemption. The Petition asserts that a violation of the O&T Agreement occurred when Midwest ISO did not seek permission from CIPCO to use the ITS and paid only Alliant for third party use of the ITS. Further, it makes clear that

16

FERC's exercise of authority over transmission facilities under Midwest ISO's functional control effects CIPCO's transmission facilities, that is, FERC's approval of the Midwest ISO OATT, the O&T Agreement, the transfer of Alliant's portion of the ITS to Midwest ISO and the transmission service provided by Midwest ISO to Ameren and the Participants of RPGI impacts CIPCO's electrical transmission system. The Petition also demands from either Midwest ISO or RPGI retrospective and prospective compensation that is based on a rate that is not part of the Midwest ISO OATT. Given the assertions and demands contained in the Petition, it is clear that CIPCO's claims attempt to interfere with FERC's exclusive authority to set wholesale rates and to regulate agreements and practices that affect wholesale rates for any transmission or sale of electric energy in interstate commerce. If a rate is not just and reasonable or if any practice or contract affecting such rate is not just and reasonable, it is up to FERC to address and remedy the situation under the procedures described in section 206 of the FPA, 16 U.S.C. § 824e. Because CIPCO's claims impinge upon the substantive provisions of the Midwest ISO OATT, which includes as a rate schedule the O&T Agreement, and FERC's exclusive jurisdiction extends over remedies for breach and non-performance of FERC-approved operating agreements in the interstate wholesale electricity market, the claims asserted by CIPCO must be dismissed under the doctrine of field preemption. *Cf. Lockyer*, 375 F.3d at 849-52 (discussing federal preemption and concluding claims fail because they interfere with a matter that falls within the exclusive domain of FERC).[10]

---

[10] In light of its conclusion regarding field preemption, the court need not address the question of conflict preemption. Nonetheless, the court notes that CIPCO's claims appear to impermissibly thwart Congress' objective to vest with FERC exclusive jurisdiction over the transmission and sale at wholesale of electric energy in interstate commerce. *Schneidewind*, 485 U.S. at 300 (stating that conflict preemption bars any state law action which "stands as an obstacle to the accomplishment of the full purposes and objectives of Congress"); *cf. Public Utility Dist. No. 1 v. IDACORP Inc.*, 379 F.3d 641, (continued…)

The filed rate doctrine is closely related to the doctrines of field preemption and conflict preemption in that judicial application of the filed rate doctrine is "a matter of enforcing the Supremacy Clause." *Nantahala*, 476 U.S. at 963. Essentially, the filed rate doctrine prohibits deviation from the wholesale electricity rates filed with FERC. *See Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577, 101 S. Ct. 2925, 69 L. Ed. 2d 856 (1981) ("[Under the filed rate doctrine], no court may substitute its own judgment on reasonableness for the judgment of [FERC]."); *Montana-Dakota Utils. Co. v. Northwestern Pub. Serv. Co.*, 341 U.S. 246, 251-52, 71 S. Ct. 692, 95 L. Ed. 912 (1951) (holding that "the right to a reasonable rate is the right to the rate which [FERC] files or fixes, and that, except for review of [FERC's] orders, the courts can assume no right to a different one on the ground that, in its opinion, it is the only or the more reasonable one"); *Transmission Agency of N. Cal. v. Sierra Pac. Power Co.*, 295 F.3d 918, 929 (9th Cir. 2002) ("[T]he filed rate doctrine provides that state law, and some federal law (e.g. antitrust law) may not be used to invalidate a filed rate nor to assume a rate would be charged other than the rate adopted by the federal agency in question."). The filed rate doctrine, however, is "not limited to rates per se." *Nantahala*, 476 U.S. at 966.

The relief sought by CIPCO is based on a rate that is not included in, and is in addition to, the current rate that IPL developed for third party use of the ITS. CIPCO's right to relief requires the court to determine a hypothetical reasonable rate for the transmission service that Midwest ISO provided over the ITS, which includes CIPCO's facilities. If Midwest ISO, RPGI, and/or the Participants of RPGI are found liable under any of the state-law claims, damages can only be determined by calculating what the rate for transmission service would have been in the event that the rate under the CIPCO OATT had been included. Accordingly, the filed rate doctrine bars CIPCO's claims. *See*

---

[10](…continued)
649-50 (9th Cir. 2004) (concluding conflict preemption applies).

*Lockyer*, 375 F.3d at 852-53 (applying filed rate doctrine to bar claims); *IDACORP*, 379 F.3d at 650-52 (same).

### IX.  CONCLUSION

In sum, CIPCO cannot proceed with its Quantum Meruit or Implied Contract In Fact count, Unjust Enrichment or Implied Contract In Law count, Trespass count or Conversion count.  Each claim asserted by CIPCO is barred by the doctrine of field preemption or, alternatively, by the filed rate doctrine.  Based on the foregoing, the Motion to Join (docket no. 25) and Motion to Dismiss (docket no. 24) are **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Midwest ISO, RPGI and the Participants of RPGI, that is, each of the defendants.  The costs of the instant action are **ASSESSED** against CIPCO.

**IT IS SO ORDERED**.

**DATED** this 18th day of September, 2007.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA